## BYINGTON v. MOORE.

1. **Depositions:** DISCREPANCY IN NAME OF NOTARY: PRESUMPTION. The practice of using merely the initial letters of Christain names in the execution of official papers creates liability to mistake and uncertainty, and is not to be commended. And, where a commission to take depositions was issued to Fred R., and was returned executed and certified to by F. A. R., *held* that, while the court could not, without more, presume that Fred R., and F. A. R., were identical, yet, as the commission must be presumed to have been sent to Fred R., and as it was executed, returned and certified by some one who might have been Fred R., and who stated in the body of his certificate that his name was Fred A. R., the identity of the commission sufficiently appeared, and the court properly refused to suppress the deposition on account of the discrepancy.

2. ———: WRONG SEAL TO COMMISSION: AMENDMENT: PRACTICE. Where, after a deposition had been taken and returned in a case pending in the circuit court, it was found that by mistake the seal of the district court had been affixed to the commission, and a motion to suppress was made on that account, *held* that, as the moving party could not have been prejudiced by the ruling, it was not reversible error for the court, in sustaining the motion, to order the clerk to attach the proper seal to the commission, and to return it, thus amended, together with the deposition, to the commissioner, with directions to him to require the witness to reappear before him, and, upon his reappearance, to read over to him the deposition, and to require him to subscribe and swear to the same again, and to certify the same back to the court.

3. ———: MOTION TO SUPPRESS: TIME OF MAKING. When a deposition is filed in term time, a motion to suppress, if made, must be made by the morning of the third day after the deposition is filed, and, in any case, must be made before the cause is reached for trial.

Byington v. Moore.

4. ———: FILING NOT ENTERED IN APPEARANCE DOCKET: OBJECTION TOO LATE ON APPEAL. Where the filing of a deposition was not entered in the appearance docket, but the deposition was read on the trial without objection on that account, and is certified to this court on appeal, it cannot be discarded here as being no part of the record.

5. **Evidence of Letters**: SECONDARY: ERROR CURED. Error in admitting secondary evidence of the contents of letters is cured by the subsequent introduction of the letters themselves.

6. **Attorney and Client**: ATTORNEY GUILTY OF FRAUD CHARGED AS TRUSTEE. Where the holder of the equitable title to lands employs an attorney to procure for him the legal title, and the attorney, by fraudulently representing that he is the equitable owner, procures the legal title to be conveyed to himself, the employer still remains the equitable owner, and the law by implication charges the attorney as trustee of the legal title for his employer.

7. **Conveyance**: DELIVERY: FACTS CONSTITUING. Where a father conveyed to his infant son an equitable interest in certain lands, and, as guardian for his son, delivered the conveyance to an attorney whom he as such guardian had employed for the purpose of procuring for the son the legal title to the lands, *held* that this constituted a delivery of the conveyance to the son.

8. **Attorney and Client**: FIDELITY REQUIRED. An attorney who takes to himself the legal title to lands which belong in equity to his client, cannot avoid his responsibility as trustee for his client, on the ground that the client came to his interest in the lands through a conveyance made in fraud of the creditors of the grantor.

9. ———: INFIDELITY NOT REWARDED. Where an attorney, unfaithful to his client, takes to himself the legal title to lands which in equity belong to his client, himself paying the balance due on the lands, and afterwards sells the lands at a profit, he cannot be allowed to share the profit, but must account therefor to his client.

10. ———: FRAUD OF ATTORNEY: ACCOUNTING: EVIDENCE CONSIDERED. This being an accounting between a client and his attorney, growing out of the conversion to his own use by the attorney of the client's property, it is *held*, upon consideration of the evidence, that the allowances made by the trial court could not properly be disturbed on appeal.

11. **Evidence**: OFFERED AFTER SUBMISSION OF CAUSE: PRACTICE. Where a cause was submitted as a finality upon all points but one, which was reserved for further evidence, and a decree was entered accordingly, *held* that, upon the further hearing, evidence upon a point already submitted was properly excluded.

*Appeal from Page Circuit Court.*

WEDNESDAY, DECEMBER 12.

ACTION in equity for an accounting and other relief. The

court decreed that there was due the plaintiff from the defend-
ant a certain sum, and entered a decree therefor, and also that
the defendant should convey to the plaintiff certain land in
Page county. Both parties appeal, the defendant perfecting
his appeal first.

*McPherrin Bros.*, for appellant

*W. W. Morsman*, for appellee.

ADAMS, J.—In April, 1856, one LeGrand Byington entered
into a contract with Page county, whereby he purchased from
the county certain land claimed by the county to be swamp
land. He paid a part of the purchase money, and took a
written contract from the county, obligating it to convey the
land to him upon its obtaining a perfect title, and upon his
paying the balance of the purchase money. The plaintiff
claims that afterward he became the equitable owner of the
land by virtue of an assignment to him of the contract. Le
Grand Byington is the plaintiff's father; and it appears that
in May, 1861, and when the plaintiff was about seventeen
months old, his father indorsed upon the contract an assign-
ment in these words: "For the consideration of the natural
affection which I have for my son, Ottoe A. Byington, and
of one hundred dollars paid to me by him, I assign to said
Ottoe A. Byington all my interest in this contract. Witness
my hand this first day of May, 1861." This was duly signed.
Whether there was any such delivery of the contract and as-
signment as to put the assignment in force, is one of the ques-
tions in dispute. Some time prior to 1868, certain difficulties
arose in relation to the title to the land, and it became un-
certain as to whether a title could be obtained from the county
as had been provided in the contract. In view of these
difficulties, it had become necessary for the plaintiff, or his
father, to employ counsel in Page county. The defendant, as
a member of the firm of Moore & McIntyre, was at that
time practicing law in that county. On the 30th day of

May, 1868, the plaintiff's father, it appears, wrote to Moore & McIntyre with the view of employing them, and, as we infer, in the matter of procuring a title to this land. The letter was answered by Moore & McIntyre on the 6th day of June following. Their answer is in these words: "Dear Sir: Yours of May 30 is at hand. Our Mr. Moore will call on you about the eleventh or twelfth of this month, and talk over your land matters in this county." Moore called as promised. As to what transpired at the interview the parties differ radically. The plaintiff claims that he at that time, through his father as his guardian, employed the defendant as his attorney to procure a title to the land. The defendant denies this, and denies that he had any knowledge of the plaintiff, and denies that he undertook to act as attorney for him or his father, but says that he purchased in good faith from the plaintiff's father all the equitable interest which he derived from the county under the contract, and in ignorance of any assignment thereof to anyone. Whatever the fact may be in this respect, the defendant applied to the county for a title to the lands, representing that he had become the owner of the contract, and induced the county to convey to him; he in the meantime paying the balance of the purchase money. He afterwards sold a portion of the land and received the proceeds. The plaintiff claims that the defendant obtained the title by false representations made to the county, and in fraud of his rights.

Before proceeding to the determination of the principal question involved, we find it necessary to determine some questions of practice which are presented by the defendant's appeal. The defendant filed a motion to suppress the deposition of LeGrand Byington, taken on behalf of the plaintiff. The grounds of the motion are stated as follows:

"1. The commission to take said deposition was directed by this court to one Fred Remley, a notary public, etc., and the deposition was taken before and by one T. A. Remley, or one F. A. Remley.

"2. The paper purporting to be a commission, and to have

been issued by the clerk of this court, under and by virtue of which said deposition was taken, was not authenticated by the seal of this court, but is pretended to be authenticated by the seal of the district court of Page county, Iowa."

The motion was sustained as to the second ground, and overruled as to the other. But, as to the second ground, the court ordered that the clerk amend the commission by affixing thereto the seal of the circuit court, that being the court from which the commission issued and in which the case was pending, and ordered that the deposition and amended commission be returned to the notary public who took the deposition, with leave and direction to said officer to require the witness to reappear before him, and, upon his reappearance, to read over to him the deposition, and to require him to subscribe and swear to the same again, and to certify the same back to the court. The commission was accordingly amended by the addition of the proper seal, and returned with the deposition to the notary public, who complied with the direction of the court as above set out. In his second certificate, he added that his name is Fred A. Remley. He signed his name to the certificate as F. A. Remley, and did not append thereto any words showing the official character in which he acted. The defendant moved again to suppress for want of these words. The court sustained the motion, but directed that the deposition and certificate be returned for an amendment to the certificate by appending to the name of the officer the words "notary public within and for the county of Johnson, in the state of Iowa"; that being the county for which Remley had been appointed notary public. The deposition and certificate were accordingly returned to him, and the amendment made as directed.

I. The defendant insists that, as the commission was issued to Fred Remley, and the certificate was signed F. A. Remley,

**1. DEPOSI-TIONS: discrepancy in name of notary: presumption.** it does not appear with proper certainty that the deposition was taken before the person to whom the commission was issued. The theory of the law is, that the clerk of the court from which the

Byington v. Moore.

commission was issued knew Fred Remley, or knew of him, and, having confidence in him, issued the commission for the purpose of clothing him specifically with power to do the things named therein. The person executing the commission and making a return of his doings should appear to be the person commissioned, and should so appear of record from a certificate appended to and returned with the commission.

Whether a court could presume that Fred Remley and F. A. Remley are the same person, is a question which admits, perhaps, of some doubt. The letter F. may be presumed to be the initial letter of a Christain name. Looking at it alone, as used in a given place, we could not say that it is the initial of Fred in such place. The most that we could say is that it might be. But the fact that it might be, taken in connection with two other facts, justifies us, we think, in presuming that the deposition was taken before Fred Remley. We may presume that the commission was sent to Fred Remley. It has been returned by some one, and a certificate signed with a name that might be that of Fred Remley states expressly that it is that of Fred Remley. The practice of using merely the initial letter of Christian names in executing official papers is not to be commended. It is liable at all times to lead to uncertainty and embarrassment. But in the case at bar, taking the certificate as a whole, we think that the identity of the name of Fred Remley and F. A. Remley sufficiently appears.

II. The next question presented is as to whether the court erred in directing the clerk to affix the seal of the proper

2. ——: wrong seal to commission: amendment: practice. court, and to return the commission and deposition to the officer named in the commission. The defendant's theory is that, as the motion to suppress was sustained, the commission went for nothing, and that a new commission should have been issued and the deposition retaken. But the order sustaining the motion must, we think, be taken in connection with the order for the reissue of the commission properly sealed. The suppression

of the deposition was merely provisional. It was made because an irregularity had occurred, and was to continue only until the irregularity could be corrected and the deposition be refiled with the proper evidence that the irregularity had been corrected. This appears clearly enough to have been the intention of the court, when both orders are considered together. Perhaps the safer and better practice would be, ordinarily, where through mistake a deposition has been taken under an unsealed commission, to cause a new one to be issued, that the testimony of the witness may be taken under it. The statute certainly contemplates that the person before whom the deposition is taken shall be clothed with the specific power at that time, and an unsealed commission can hardly be deemed to have that effect. But when it appears with reasonable certainty that no prejudice has been wrought by the reissuance of a commission, as in this case, we do not think that we should be justified in holding it to be erroneous. Whatever irregularity there may have been, it may, we think, be looked upon as an unimportant deviation, and insufficient, under section 3741 of the Code, to justify excluding the deposition. It is contended, to be sure, that the irregularity is not an unimportant deviation. The point especially relied upon is, that it was the defendant's right to have the witness so sworn that he should have the penalty of perjury before his eyes, and that the witness in this case was not so sworn, even at the time he was sworn upon being recalled. The claim that the officer was uncommissioned at the time the witness was recalled and resworn must, we think, be predicated upon the theory that a commission can issue only to take a deposition, and not merely to re-swear a witness to a pretended deposition already taken. But we think that, when the commission was properly sealed and reissued, and placed in the officer's hands, he was clothed with power to administer the oath in question to the witness. Any other view, it appears to us, would be extremely technical, and not demanded for the just protection of any one's rights. The views which

Byington v. Moore.

we have expressed we think sufficiently dispose of the objec-
tion urged to the manner in which the deposition was taken

III. The deposition was refiled for the third time Decem-
ber 9, 1882. The case was called for trial December 13,
1882. On that day the defendant asked for three
days' time to file further objections to the depo-
sition and motion to suppress the same, and, in
excuse for not having filed his objections and motion before,
he alleged that he had had no notice of the last filing. The
court refused to allow him such time. He contends that in
this the court erred. He claims that he was entitled to three
days' time under the statute. What provision he relies upon
he does not point out, but we suppose it to be section 3751
of Miller's Code. That section provides that, when deposi-
tions are filed, notice thereof shall be given by the clerk to
the attorneys of the parties. It also provides that, where a
deposition is filed during the term, a motion to suppress, if
made, must be made by the morning of the third day after the
deposition is filed, and in any case must be made before the
case is reached for trial. In our opinion, the defendant does
not show that he was entitled to three days. The deposition
had been filed more than three days already. It may be that
he had not had notice, but it is not properly shown to us that
he had not. Besides, the case was reached for trial on that
day, and may have been reached when the request for time
was made.

IV. The defendant claims that no entry of the third filing
of the deposition was made in the appearance docket until
after the trial, and that the deposition should not
for that reason, if for no other, have been read in
evidence. But this objection does not appear to
have been made in the court below, and we think
that it cannot be made here for the first time. The defend-
ant, to be sure, contends that, if no entry was made in the ap-
pearance docket, the deposition should be treated as not filed,
and not a part of the record, and cites authorities showing

that we have so treated pleadings where no entry was made in the appearance docket. To this we have to say that we so treat pleadings, because the statute expressly so provides. There is no such express provision in respect to depositions. The filing of the deposition appears now to have been entered in the appearance docket, and, having been read without objection for want of such entry when read, and having now been certified to us, we should not be justified in discarding it as no part of the record.

V. Some objection was made to the evidence introduced by plaintiff of the contents of letters addressed to LeGrand Byington, and purporting to have the signature of Moore & McIntyre. Whether the objection was well taken we need not determine. As we understand the abstract, the original letters were afterwards put in evidence, being attached to the deposition of one Alexander.

5. EVIDENCE of letters: secondary: error cured.

VI. Coming now to the principal question in the case, and that is as to whether the defendant took title to the land from the county in trust for the plaintiff, we have to say that we think that he did. We have all reached this conclusion upon a separate reading of the evidence; and, while there are some strange facts and circumstances which prevent us from adopting any view that is entirely satisfactory, yet, taking the record as it is presented to us, we cannot say that there is much doubt on which side the preponderance of the evidence lies. So far as this mere question of fact is concerned, we shall content ourselves, as is our custom, with stating the conclusion which we have reached. We could not set out and discuss fully the grounds of our conclusion, without setting out fully the evidence upon both sides; and this would serve no useful purpose, but merely encumber the reports. We have to say, however, that, connected with the determination of the question of fact, some legal questions are presented, upon which it is proper that our views should be briefly set forth.

VII. The defendant contends that no implied trust is shown in this case, because such is not the purport of the plaintiff's averment, and that no express trust is shown, because the plaintiff's evidence of a trust is not in writing. The plaintiff, after averring that the title to the land described in the contract had become clouded and in dispute, and after averring that his legal guardian, LeGrand Byington, employed the defendant as attorney for him in the settlement of the difficulties, made an averment in these words: "But your petitioner avers that the said defendant fraudulently, and wholly without authority, claimed and represented to the board of supervisors of Page county that he was the legal holder of said contract, and entitled to the benefits and proceeds of the same, and that, in virtue and pursuance of such false representations, the conveyance from said county of said lands above described was made directly to said defendant, instead of to your petitioner."

*6. ATTORNEY and client: attorney guilty of fraud charged as trustee.*

Where the holder of an equitable title to lands employs an attorney to procure for him the legal title, and the attorney, by fraudulent representations that he is the equitable owner, procures the legal title to be conveyed to himself, the employer still remains the equitable owner, and the law by implication charges the attorney as trustee of the legal title for his employer. The case differs widely from *Burden v. Sheridan*, 36 Iowa, 125, cited and relied upon by the defendant. Burden had not become the equitable owner of the land, nor had he any interest whatever at the time of his alleged employment of Sheridan. The purchase of the land was yet to be made. In the case at bar, we think that the petition clearly shows an implied trust. It was competent, therefore, for the plaintiff to establish it by parol.

VIII. A question is raised by the defendant in regard to the delivery of the assigned contract to the plaintiff. The assignment was written when the plaintiff was less than two years old, and according to the evidence the contract passed into the defendant's

*7. CONVEY-ANCE: delivery of: facts constituting.*

hands before the plaintiff was ten years old.   Probably it
never actually passed into the plaintiff's hands.   But the as-
signor had been appointed his guardian, and, according to the
view which we take of the evidence, he as such guardian em-
ployed the defendant for the plaintiff, and delivered to the de-
fendant the contract as the attorney of the plaintiff.   If we
are correct in this, there was a sufficient delivery.

IX. The defendant contends that the evidence shows that

8. ATTORNEY
and client:
fidelity re-
quired.

the assignment, if made, was made to enable the
assignor to defraud his creditors.   We have not
thought it proper to go into any inquiry as to
what the fact was in this respect.   If it should be conceded
that such was the object, the assignment was good as against
the assignor.   The plaintiff as assingee could employ an at-
torney, and the attorney could not set up the fraud to enable
himself to escape his express and implied obligations.

X. The defendant insists that, if he is to be charged as
trustee, he should not be charged for the entire land and

9. ——: infi-
delity not re-
warded.

proceeds.   His theory is that he should only be
charged for such proportion as the amount paid
by the plaintiff's assignor bears to the whole amount paid as
purchase money.

Where one person receives money from another to invest
for him in real estate, and he adds certain money of his own,
and invests the whole together, and takes the title in his own
name, it may be conceded that he should be charged as trustee
for only a proportionate share.   But the case at bar is differ-
ent.   The plaintiff had become the equitable owner of the
entire property, subject to the payment of the balance of the
purchase money.   If the bargain was a good one, as it ap-
pears that it was, the plaintiff was entitled to the benefit of
it.   We do not think that the case is one which would justify
us in charging the defendant proportionately.

XI. The court below allowed the defendant for taxes paid
on the land, but allowed him nothing for taxes paid on the

10. ——: fraud proceeds of the sales of land which he made.
of attorney: accounting: Possibly, if these proceeds had been kept distinct,
evidence considered. and the amount of taxes paid thereon had been
shown, he should have been allowed for the taxes paid. But
the evidence shows that the defendant used the money, and it
is not shown what specific investments were made with it.
We can not know, therefore, how the property was assessed
which was purchased with the money, nor what amount of
taxes was paid, if any. Any finding that the court should
attempt to make would be only a loose estimate, and one not
based upon any reliable evidence. We do not think, there-
fore, that we should be justified in making an allowance for
such taxes.

XII. The defendant claims that he expended money in em-
ploying attorneys to aid him in the matter of the title to these
THE SAME. lands, and that he ought to be allowed for such
expenditure. The evidence shows that the defend-
ant employed attorneys, and paid in one instance $750, and
in another $300, but it is not shown that this money was
paid for services rendered exclusively in the plaintiff's matters,
and we infer from the evidence that it was not.

We have considered the principal questions presented on the
defendant's appeal. We have not attempted to answer all his
positions. We could not do so without unduly extending this
opinion. It must suffice for us to say that we have exam-
ined them all, and do not think that they are well taken.

XIII. The plaintiff appealed upon the ground that the
THE SAME. amount allowed the defendant was too much. The
court allowed the defendant $1,150 as balance of
purchase money paid by him, and a decree was entered upon
that basis. We think that the allowance was justified by the
evidence then before the court. Afterwards the plaintiff
sought to introduce other evidence upon the point. The
decree entered provided for the introduction of other evidence
in regard to the amount of taxes paid, but not in regard

to the amount of purchase money paid. The court, therefore, refused to consider the plaintiff's evidence upon the latter point.

The plaintiff claims that he was not too late, because, in making up the issues, no claim was made by the defendant to be reimbursed for payments or expenses, and that, as the court had allowed the defendant to testify to payments when the plaintiff was not fully prepared to rebut him, he should be allowed to introduce his evidence in rebuttal at the subsequent hearing set for specific matters, though this was not embraced among them. As to the issues, we think it sufficient to say that the plaintiff called for an accounting. The parties introduced evidence in relation to it. No objection appears to have been made to the evidence. The parties submitted the case upon the evidence as a finality, so far as the point in question is concerned. After decree rendered as a final decree upon this point, we do not see how the plaintiff could properly claim that he was entitled to introduce further evidence. On both appeals we think that the decree must be

11. EVIDENCE: offered after submission of cause: practice.

AFFIRMED.