STATE OF IOWA V. LAWRENCE M. VAN AUKEN, Appellant.

**Indictment:** NAMES OF GRAND JURORS: *Presumption.* The fact that Frank McCormick and Walrick D. Broers acted as grand jurors, while "F. W. McCormick" and "W. D. Broers" were the names drawn for the grand jury, and returned by the township officers, is no ground for setting aside the indictment; the presumption being that the officer who served the precept, did so by summoning the persons named therein, and that they were known by the initials so used.

IMMATERIAL MIS-DESCRIPTION. Where an indictment for forgery, in altering the record of the board of county supervisors, sets out the matter alleged to have been changed, and the alterations charged, error in describing such matter as the record of a "resolution," whereas it was merely an entry showing that an allowance had been made to a county officer, is immaterial.

REPETITION. An indictment charging that defendant did unlawfully and feloniously and "with intent to defraud" falsely alter and forge a certain public record, which is set out and the change made therein specifically described, together with the record as it appeared after the alteration was made, is not bad in failing to subsequently allege that the alteration was made with intent to defraud.

**Forgery:** APPARENT LEGAL EFFICACY OF INSTRUMENT: *Clerk hire.* Code, section 771 providing that, when a county officer receiving a salary is compelled to employ a deputy, the supervisors may make a reasonable allowance to such deputy, relates to the employment of temporary assistance without the authority of the supervisors, and does not conflict with Code, section 3798, as amended by Acts Eighteenth General Assembly, chapter 184, section 3, fixing the annual compensation of the county auditor at one thousand, two hundred dollars, and providing when it is necessary for the proper discharge of the duties of the office, the supervisors may, on application of the auditor, authorize him to employ a deputy on a salary not exceeding six hundred dollars per annum.

SAME. Hence, a record entry reciting that the county board had allowed the auditor two hundred and fifty dollars for hired help

in a specified year, states a transaction *prima facie* legal, and may, therefore, be the subject of forgery.

*Same.* The apparent legal efficacy of such alteration is not affected by evidence that the allowance, two hundred and fifty dollars, for the year 1893, with the fees collected by the auditor during that year, amounted to more than the board was legally authorized to allow.

SAME. It is sufficient to constitute forgery that the forged instrument be of apparent legal efficacy, or the evidence of a legal right.

SAME. An alteration by the county auditor of the records of the board of supervisors, although made after the expiration of his term of office, constitutes a forgery, where such alteration might enable him to make a successful claim for the fees of his office if he had accounted for them, or to defeat an action for their recovery, if he had not.

MATERIAL ALTERATION. An indictment, charging defendant with forgery, in altering a record of the board of supervisors, originally reciting, that "the board allowed the auditor $250, for hired help for 1893," by inserting the words "above fees," in place of "for 1893," charges a material alteration of the record, though it fails to show, that defendant was the county auditor, and that he intended to profit by the alteration.

EVIDENCE. On the trial of such indictment, a bill, which defendant had presented to the board of commissioners, including an item of two hundred and fifty dollars, for making assessor's plats, etc., was properly received in evidence as tending to show the claims defendant had made for compensation, and to explain the knowledge and motives with which he acted in making the alleged alteration.

*Same.* It was also proper to show that defendant had been county auditor, and to introduce his report of the fees he had collected.

Courts: ADJOURNMENT OF TERM. A judge appointed to hold a term of court in each of two different counties may lawfully adjourn the term of court in one county to a day specified, and hold a term in the other county during the meantime.

*Appeal from Cerro Gordo District Court.*—HON. P. W. BURR, Judge.

WEDNESDAY, OCTOBER 7, 1896.

THE defendant was convicted of the crime of forgery, and from the judgment, which required that he be imprisoned in the state penitentiary at Anamosa, at hard labor, for the term of six months, he appeals.—*Affirmed.*

*S. G. Van Auken* and *Cliggitt & Rule* for appellant.

*Milton Remley*, attorney general, for the state.

ROBINSON, J.—I.   The defendant had no opportunity to object to the grand jury until after the indictment was presented.  He was then arraigned, and moved to set aside the indictment on the ground that the grand jurors who found it, were not the persons whose names were returned by the township officers for the grand jury list, and that they were not the persons who were drawn for the grand jury for the year 1895, in which the indictment was found.  A further ground for the motion was that the indorsement on the indictment, "A true bill," was not signed by a member of the grand jury.  The motion was overruled.  The facts appear to be that the names returned by the township officers were written as follows:  "F. McCormick, Wm. Barragy, H. S. Butz, W. D. Broers and Wm. G. Helm;" and the names drawn were written:  "F. McCormick, Wm. Barragy, S. H. Butz, W. D. Broers, and W. G. Helm."  The persons who acted as grand jurors were Frank McCormick, William Barragy, William G. Helm, Walrick D. Broers, and H. S. Butz.  The indorsement, "A true bill," was signed, "F. McCormick, Foreman of the Grand Jury."  It will be observed that in some cases the given name is set out, while in others, letters or initials, only, are used for the given names.  Thus, "F. McCormick" is given as the name of a person returned by the

township officers who was drawn as a grand juror, and who signed the indorsement on the indictment, while Frank McCormick is shown to have served as a grand juror. W. D. Broers was returned and drawn as a grand juror, and Walrick D. Broers served. The argument of the appellant in support of the motion is that a single letter cannot be presumed to be the initial of, and to stand for, any particular name, and that F. McCormick cannot be presumed to be Frank McCorrick; that Walrick D. Broers cannot be presumed to be W. D. Broers; that a single letter may not be presumed to be a full given name; that an initial letter cannot be properly used in lieu of a full name in legal proceedings; and that a person whose full given name is set out will not be presumed to be the same as one who has the same surname, and the initial letter of whose given name is the same. It is undoubtedly true that there are authorities, especially at common law, which tend, in some degree, to support the argument of the appellant. 16 Am. & Eng. Enc. Law, 128. But it is a matter of common knowledge that many persons use the initials of their given names, only, with their surname, in business transactions; and cases are exceptional where persons having two given names set out both in full in ordinary business or other transactions, and it may be safely asserted that it is the general usage not to do so. The same general rules apply when the name of a person is spoken or written by others. The practice of using initial letters of given names is too common to be disregarded, and we know of no reason why a person may not with entire propriety use an initial letter in lieu of his given name in most business transactions. In *Oakley v. Pegler* (Neb.) (46 N. W. Rep. 921), the plaintiff in error sought to defeat a foreign judgment because it had been rendered against "O. R. Oakley" while his full name was Oscar Rodman Oakley.

He admitted that his business signature was "O.
R. Oakley" and stated that "all business men use their
initials." The court held that the name he customarily
used might be regarded as his business name, and that
a judgment rendered against him in that name could
not be attacked collaterally. The argument in favor of
using the full given name is that by so doing, the person
to whom it belongs, is more readily and certainly
identified, and that is no doubt true. It would be good
policy in many cases, especially where the title to real
estate is involved, to use the full names. But no
question of that kind is presented here. It may be con-
ceded that under ordinary circumstances "F" will not
be presumed to stand for Frank, and that "W. D.
Broers" will not be presumed to be Walrick D. Broers,
but this case involves facts which authorize the pre-
sumption that the persons who served as grand jurors
were the ones whose names were returned and drawn
for that purpose. The grand jury was drawn under a
law which required that the list from which grand
jurors were to be drawn, should consist of seventy-
five names, returned from the several election pre-
cincts of the county, on an apportionment among them
made by the county auditor, and not more than one
grand juror could be drawn from any civil township
unless the civil townships were fewer than the required
number of grand jurors. In this case, the names returned
by the township officers, and drawn for the grand
jury, and shown by the court records to have been the
names of the persons who served as grand jurors,
included several in which initial letters were used for
given names. The names were the same in each case,
excepting that the name, "Wm. G. Helm," was
returned by the township officers, and is given in the
court record, as the name of one of the grand jurors,
but the name, "W. G. Helm," was drawn from the
jury list. It appears that several of the jurors who

served had given the names which we have set out. In view of the custom of using initial letters, to which we have referred, it will be presumed, in the absence of a showing to the contrary, that the sheriff who served the precept did so by summoning the persons whose names were given therein, and that the jurors who actually served, were the persons named in the precept, and that they were known by the names therein used. It must also be presumed that "F. McCormick" was the form used by the juror, Frank McCormick, in signing his name. This conclusion finds support in the following cases: *State v. Pierce*, 8 Iowa, 238; *State v. McComb*, 18 Iowa, 49; *State v. Williams*, 20 Iowa, 100; *State v. Stanley*, 33 Iowa, 532; *Byington · v. Moore*, 62 Iowa, 474 (17 N. W. Rep. 644); *State v. Arnold*, 98 Iowa, 253 (67 N. W. Rep. 252). The motion to set aside the indictment was properly overruled.

II. The indictment charges the defendant with the crime of forgery, in language as follows: "The said Lawrence M. Van Auken, on the 15th day of January, in the year of our Lord 1895, in the county aforesaid, did unlawfully and feloniously, and with intent to defraud, falsely alter and forge a certain public record, to-wit, the record of the proceedings of the board of supervisors of Cerro Gordo county, and state of Iowa, in which the proceedings of the board of supervisors of said county are recorded by the county auditor, as by law provided, and particularly the record of the proceedings of said board of supervisors of said county, made and recorded in supervisors' record book, on the 16th day of November, A. D. 1893, in the following words and figures, to-wit, 'The board allowed the auditor $250.00 for hired help for 1893,' by altering said record of said resolution by erasing the words 'for 1893' therefrom, and inserting the words 'above fees' in their place and stead, making

the record of said resolution falsely read as follows, to-wit, 'The board allowed the auditor $250.00 for hired help, above fees,' contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state of Iowa." It is claimed that this contains repugnant allegations, in that the record alleged to have been altered is described as the record of a resolution, but appears to have been merely an entry which shows that an allowance had been made to the auditor. It was not strictly correct to speak of the matter recorded as a "resolution," but the record alleged to have been changed, and the alteration charged, are fully set out, and the error in describing it was wholly without effect, and immaterial.

III. It is claimed, that the indictment does not properly charge that the alteration of the record in question was made with intent to defraud. We do not think the claim is well founded. The indictment charges, that the defendant "did, unlawfully and feloniously, and with intent to defraud, falsely alter and forge a certain public record." The record, as it was claimed to have existed before the forgery, was set out. The change made therein was specifically described, and the record, as it appeared after the alteration had been made, was given. It was not necessary to follow that showing, by alleging again, that the alteration was made with the intent to defraud. The charge contained in the first part of the indictment, that the defendant did alter and forge a public record, with the intent to defraud, was made with specific reference to the acts which were afterward described, and there was no occasion to repeat it.

IV. It is next claimed that the record in question was not, and could not have been made, the subject of forgery, for the reason that, in its original form, it was on its face illegal and void. It is not

denied that the recorded proceedings of the board of
supervisors constitute a public record, which may be
the subject of forgery, within the meaning of
section 3917, of the Code, but it is said that the
board of supervisors did not have the legal
right to allow the county auditor two hundred and
fifty dollars, or any other sum, for "hired help," in
the year 1893.   Section 3798, of the Code, as amended
by section 3, of chapter 184, of the Acts of the
Eighteenth General Assembly, relates to county aud-
itors, and is as follows:  "The total compensation of
the auditor in any one year shall not exceed the sum
of twelve hundred dollars, inclusive of fees; but
when in the judgment of the board of supervisors, it
is necessary for the proper discharge of the duties of
the office, said board may, upon application of the
auditor, authorize said auditor to employ a deputy or
clerk, at a salary not exceeding the rate of six hun-
dred dollars per annum." ' Section 771, of the Code,
provides that, "when a county officer receiving a
salary, is compelled by the pressure of business of his
office, to employ a deputy, the board of supervisors
may make a reasonable allowance to such deputy."
It is claimed that the allowance made under these
provisions, must be to the deputy or clerk, and not to
the auditor.   The provision made by section 3, of
chapter 184, of the Acts of the Eighteenth General
Assembly, in regard to the employment and salary of
a deputy or clerk for the auditor, is the same as that,
made by the preceding section of the same act, for
the deputy or clerk of a county treasurer, except that
in the latter, the salary of six hundred dollars author-
ized is limited to the time the deputy or clerk is act-
ually employed. The statute last cited, and section 771,
of the Code, were considered in *Harris v. Chickasaw
County*, 77 Iowa, 345 (42 N. W. Rep. 313), where it was
held that they were not in conflict, that section 771

relates to the employment of special or temporary assist-
ance without the authority of the board of supervisors,
and that where such assistance is necessarily employed,
the county is liable for its payment.    The first section
of the act of the Eighteenth General Assembly, which
we have cited, has a provision in regard to the employ-
ment of a deputy or clerk for the clerk of the courts
like that contained in the next section in regard to
the deputy or clerk of a county treasurer, to which
we have already referred.    The first section and
section 771 of the Code were considered in *Gamble
v. Marion County,* 85 Iowa, 675 (52 N. W. Rep.
556), where it was held that the county was liable for
services of a clerk necessarily employed by the clerk
of the courts, but not applied ror to, nor authorized
by, the board of supervisors.    It is said that in each of
those cases the principal was the assignee of his clerk,
and thus occupied the place of the latter, and did not
seek to recover in his own right in suing for the
amount which his clerk had earned.    But neither
case was based on that theory.    It was immaterial to
the county whether its officer sought to recover for
money he had paid to a clerk as a salary, or for a claim
for a salary, held as assignee. It is true that the allow-
ance could not have been made to the officer except-
ing for work performed by a deputy or clerk who was
necessarily employed to do it.    The officer could not,
under the pretense of having done extra work,
increase his authorized salary by demanding and
receiving extra compensation himself; but it was not
unlawful to allow him compensation for which he
was liable to a clerk or deputy who had been, or
necessarily would be, employed to perform the duties
of his office.    The allowance made by the board was
"for hired help for 1893."    That will be presumed to
have been help properly hired to render services in the
office of the defendant,    Following the cases cited, we

must hold that the allowance made was *prima facie* legal.

V. The indictment charges, and the proof shows, that the alteration in question was made in January, 1895. It is claimed that, as the term of office of the defendant expired before the record was changed, it must be presumed that he had previously accounted for the fees of his office; that the record appeared to have answered the purpose for which it was made, and to be without further force; that the indictment does not show, that when the record was altered there were, in fact, fees received by him for which he had not accounted; that it does not show, that the alteration of the record could have prejudiced any one; and, therefore, that the claim of forgery is not properly charged. It is not essential to the commission of that crime, that the forged instrument would have been, if genuine, of legal efficacy. It is sufficient, if it might apparently be of legal efficacy, or the foundation of a legal liability, or the evidence of a legal right. *State v. Pierce*, 8 Iowa, 234; *State v. Sherwood*, 90 Iowa, 550 (58 N. W. Rep. 911); *Com. v. Ray*, 3 Gray, 446; 8 Am. Enc. Law, 478; Whart. Cr. Law. sections 680, 695. The alteration in question was designed to show that the defendant was entitled to the fees of his office, in addition to the allowance made for assistance. If he had already accounted for the fees, it might give him an apparent legal right to recover them of the county. As evidence of a right, it might have enabled him to make a successful claim for the fees, if he had accounted for them, or, if he had not, to defeat an action brought to recover them of him. The evidence shows, that he had not, in fact, accounted for the fees for the years 1893 and 1894, and that the alteration was designed to make it appear that he was not under any obligation to

account for them.   We conclude, that the indictment is not open to the objection made.

VI.   The appellant contends that the indictment is insufficient because it does not show that the alteration was, in any respect, material.   It consisted of two distinct parts:   *First*, the erasure of the clause "for 1893;" *second*, the insertion of the words "above fees." As originally made; the record showed an allowance for the year 1893.  By the alteration the allowance was made to appear indefinite, and, under it, the defendant might have claimed that it was only a partial payment, or that it was designed to be an allowance for each year of his last term of office.   His acts show that he intended to make the latter claim.   The words "above fees," as used, expressed the idea— although not with the utmost accuracy—that the defendant was to have the fees of his office in addition to the allowance of two hundred and fifty dollars.   It is true, the indictment does not show that the defendant had been county auditor, and that he intended to profit by the alteration of the record, but it was not necessary that it should do so.   It showed fully and clearly the exact alteration of which the defendant was accused, and that it was made unlawfully and feloniously, and with intent to defraud, and that it was of a character to defraud, and that the record altered was the subject of forgery.   That we think was sufficient.   A person of common understanding could not have failed to know what the indictment intended to charge.

VII.   The appellant complains of the introduction in evidence of a bill which he had presented to the board for payment.   The bill included an item of two hundred and fifty dollars for making assessor's plats and books for the year of 1895.   It was properly received as tending to show the claims the defendant had made for compensation, and

to explain the knowledge and motives with which he acted in making the alteration in question. It was also proper to show that he had been county auditor, and to introduce in evidence his report of the fees he had collected. We do not find any error in the rulings on the admission of evidence.

VIII.   Complaint is made of instructions given by the court, and of its refusal to give others asked by the defendant. It is said that the court erred in using the phrase "apparent efficacy," instead of "apparent legal efficacy," in referring to the record as altered. If the court erred in this respect, no prejudice could have resulted. The charge, as a whole, is full, and fair to the defendant. The instructions asked by him, so far as they were correct and material, were incorporated in the charge given; and the evidence is sufficient, beyond question, to sustain the verdict. In this connection, it is urged that the evidence shows that the allowance of two hundred and fifty dollars for the year 1893, with the fees collected during that year, amounted to six hundred and twenty-six dollars and twenty cents, or to more than six hundred dollars, which the law permitted the board of supervisors to allow for a clerk or deputy, and therefore, that the alteration did not have any apparent validity. The record itself, as altered, did not disclose that the allowance it made was greater than that authorized by law, but appeared to be authority and evidence in favor of the claim of right to the fees which the defendant was making, which the alteration was designed to aid.

IX.   The verdict was returned on the fourteenth day of September, 1895. On the eighteenth the defendant filed a motion for a new trial, and a motion in arrest of judgment. They were overruled on the twenty-eighth, and judgment was entered, notwithstanding an objection was made thereto by the

defendant to the effect that the court was not then legally in session, and did not have the right or jurisdiction to render judgment. The objection was based upon the following facts: By virtue of an order made by the proper district judges, a term of court commenced in Cerro Gordo county on the ninth day of September, 1895, and in Hancock county, in the same judicial district, on the twenty-third day of the same month. Burr, J., was assigned to hold both terms. On the nineteenth day of September the court then being held in Cerro Gordo county was adjourned to the twenty-third. On that day it was opened, and, in the evening, was adjourned until noon of the twenty-eighth. In the morning of the twenty-fourth, court was opened in Hancock county by Burr, J., and continued in session from day to day until nearly noon of the twenty-eighth day, when it was adjourned until the thirtieth, the business of the term not having been completed; and the adjourned term in Cerro Gordo county was opened, and the proceedings to which we have referred were had. There were but two judges in the district, and the other judge was engaged during the time in question in holding court in Floyd and Bremer counties, in the same district. The appellant contends that what was done was, in effect, the holding of two terms of court at the same time, by the same judge, in different counties. The right to adjourn a court from time to time, and to hold a term in one county during the time fixed for the holding of a term by the same judge in another county, is well settled. See *State v. Stevens*, 67 Iowa, 558 (25 N.W. Rep. 777); *State v. Peterson*, 67 Iowa, 568 (25 N. W. Rep. 780); *Cook v. Smith*, 54 Iowa, 639 (6 N. W. Rep. 259, and 7 N. W. Rep. 16); *State v. Knight*, 19 Iowa, 96; *Weaver v. Cooledge*, 15 Iowa, 244. It was held in the case entitled *In re Hunter's Estate*, 84 Iowa, 389 (51 N. W. Rep. 20), that a term

of court being held in one county may be adjourned to a time subsequent to that appointed for a regular term to be held by the same judge in another county of the district, and continued at the time to which it was adjourned. This case differs from that in the fact that there was an adjournment of the court in each county, and that the holding of court was to be resumed in Hancock county after the adjourned business in Cerro Gordo county should be finished. We do not think that fact affects the right of the court to transact the business required to dispose of this case as it did. The court was not in session in the two counties at the same time, and it had the power to do what was done in this case when judgment was rendered. The cases of *Davis v. Fish*, 1 G. Greene, 412, and *Grable v. State*, 2 G. Greene, 565, were not decided under existing statutes, and are not applicable in this case.

X. What we have said disposes of the controlling questions in this case. Others are presented in argument, but are disposed of by what we have said, or are not of sufficient importance to justify special mention. The proceedings of the district court appear to have been without prejudicial error, and the judgment is AFFIRMED.