COX v. DURHAM et al.

(Circuit Court of Appeals, Eighth Circuit. March 14, 1904.)

No. 1,960.

1. FALSE IMPRISONMENT—SUFFICIENCY OF WARRANT TO PROTECT OFFICER—QUESTION FOR COURT.

Whether a warrant of arrest sufficiently describes the person arrested thereon to afford protection to the officer making the arrest against an action for false imprisonment is a question for the court, where the facts are undisputed.

2. SAME—DESCRIPTION OF PERSON.

A person's middle name is not recognized in law, and the omission of the initial letter of such name in a warrant of arrest, or a mistake therein, is immaterial.

3. SAME—USING INITIAL OF FIRST NAME.

It is sufficient to describe a person in a warrant by giving the initial letter of his first name instead of writing such name in full, especially where he ordinarily uses and is known by the initial.

4. SAME.

A warrant commanding the arrest of J. I. Cox, and reciting the filing of a complaint charging said Cox, "late of the county of Boulder and state of Colorado," with having committed a crime in such county, and being a fugitive from justice, protects the officer in the arrest thereon of James T. Cox, commonly known as J. T. Cox, where he was the person in fact intended, although he was not late of said county nor a fugitive from justice, the description being sufficient, and those being matters to be determined on his trial, and not by the officer.

In Error to the Circuit Court of the United States for the Western District of Missouri.

James M. Houston, for plaintiff in error.

A. S. Van Valkenburgh (William Warner and Robert F. Porter with him on the brief), for defendants in error.

Before SANBORN, THAYER, and HOOK, Circuit Judges.

THAYER, Circuit Judge. James T. Cox, the plaintiff in error, brought this action against Edwin R. Durham, the United States marshal for the Western District of Missouri, John E. Morrison, and the American Surety Company of New York, who are the defendants in error. The complaint contained two counts, in one of which damages were claimed apparently on account of the abuse or misuse of process, and in the other damages were claimed as for a false imprisonment. The surety company was the surety on the official bond of the marshal, while the other defendant, Morrison, appears to have been one of the marshal's deputies who made the arrest hereinafter described. The facts which gave rise to the controversy appear to be these: In April, 1899, a post office at Boulder, Colo., was broken into and robbed. The robber was at first unknown, but afterwards a man who went by the name of George Rogers was arrested at Lincoln, Neb., for some offense against the postal laws, and while on the way to jail threw away some papers and checks which were supposed to have some bearing or throw some light on the robbery previously committed at Boulder. Among the papers so thrown away, but subsequently recovered,

was an express money order receipt which indicated that the money order was purchased by J. T. Cox and was payable to J. J. Cox at a place named Belton. A post office inspector by the name of Waters, who was engaged in investigating the robbery at Boulder, Colo., when this receipt came into his hands and certain inquiries had been made with reference thereto of persons who were acquainted with Rogers, was led to conclude that the real name of the man Rogers, who threw the receipt away, was J. T. Cox, and that he had in fact committed the robbery at Boulder. For the purposes of the present case it is unnecessary to state more in detail the reasons which led him to this conclusion. As the name of the state where Belton was located was not stated on the face of the receipt, the inspector proceeded to ascertain its location. He found that there were only four post offices named Belton in the United States, one of which was located in Texas, one in Oklahoma territory, one in South Carolina, and one in Missouri. He thereupon addressed an inquiry to the postmasters at three of these places to ascertain if any person by the name of J. T. Cox was known or was living in the vicinity. He received a letter from the postmaster at Belton, Mo., under date of January 11, 1900, informing him that a man by the name of J. T. Cox was living in that vicinity. Acting on the belief that the person residing near Belton, Mo., by the name of J. T. Cox, was the person for whom he was in search, and believing, apparently, that the evidence in his possession tended to show that he had committed the robbery at Boulder, he proceeded to Kansas City, Mo., near which city Belton, Mo., is located, and laid the facts and his suspicions before the United States attorney for the Western District of Missouri. Thereupon one of the assistants of that officer filed an information under oath before a United States commissioner, charging, on information and belief, that on or about April 11, 1899, at the county of Boulder and state of Colorado, "one J. I. Cox, alias George Rogers,  *  *  *  did unlawfully and feloniously break into a certain building then and there used  *  *  *  as a post office of the United States with intent therein to commit larceny and other depredations, and the property of the United States to steal, take, and carry away; and that the said J. I. Cox, alias George Rogers, is now a fugitive from justice within the Western District of Missouri." On the filing of such information the commissioner issued a warrant commanding the United States marshal for the Western District of Missouri and his deputies, or any or either of them, in the name of the President of the United States, "to apprehend the said J. I. Cox, alias George Rogers, wherever found in your district, and bring his body forthwith before me or any other commissioner having jurisdiction of said matter, to answer the said complaint, that he may then and there be dealt with according to law for the said offense." The warrant contained the usual recital that a complaint in writing under oath had been made before the commissioner, "charging that J. I. Cox, alias George Rogers, late of Boulder county, in the state of Colorado, on or about the 11th day of April, A. D. 1899, did at the county of Boulder, in violation of section 5478 of the Revised Statutes of the United States, unlawfully and feloniously break into a building then and there used  *  *  *  as a post office of the United States, with intent there-

in to commit larceny and other depredations." This warrant was placed by the marshal in the hands of one of his deputies, the defendant, John E. Morrison, who proceeded to Belton, Mo., to make the arrest. The arrest was made a little after daylight on the morning of January 16, 1900, and handcuffs were placed on the prisoner at the time of the arrest, although the plaintiff protested that if the marshal desired to take him to any place he would go peaceably without being handcuffed. While being taken by train from Belton to Kansas City, Mo., the warrant was read to the prisoner, and when so read to him he advised the officer that his name was J. T. Cox, and not J. I. Cox, as specified in the warrant, and that for this reason he was not properly described. After the plaintiff was taken to Kansas City, Mo., he was brought before the commissioner, and advised the commissioner that his true name was J. T. Cox, and not J. I. Cox, whereupon, as the plaintiff testified, the commissioner changed the letter I to a T, saying that the "I" was meant for a "T." He was committed to jail under the description James T. Cox, alias George Rogers, and was vaccinated pursuant to jail regulations. Several hours after he had been committed to jail, but on the same day, the plaintiff was discharged and left for home that evening, it having been discovered in the meantime by the post office inspector that he was not the man who had committed the robbery at Boulder, Colo., and that the suspicions previously entertained to that effect were erroneous.

At the conclusion of the trial, the trial court instructed the jury, in substance, as a matter of law, that there could be no recovery against the marshal as for a false imprisonment; that the warrant was sufficient to protect the officer from an action of that character. The trial court, however, allowed the jury to determine whether in executing the process the marshal's deputy had been guilty of any harsh or unnecessary ill treatment of the prisoner amounting to an abuse of process, and permitted them to assess such damages as they deemed reasonable if they so found. Under these instructions the jury returned a verdict in favor of the defendants, on which a judgment was subsequently entered, and the case is before this court for review.

Counsel for the plaintiff in error say, in substance, that the principal errors complained of consist in the action of the trial court in declaring, as a matter of law, that the plaintiff was sufficiently described in the warrant of arrest; that the warrant protected the officer in making the arrest, so that he could not be held liable as for a false imprisonment, and in refusing to submit these questions to the jury, by whom, as counsel for the plaintiff urges, the sufficiency of the warrant as a justification should have been determined. We fail to perceive that it was within the legitimate province of the jury to determine whether the warrant contained an adequate description of the plaintiff and was sufficient to protect the marshal in an action for false imprisonment. There was no controversy with reference to the facts in the light of which this question ought to be determined. The plaintiff's real name was confessedly James T. Cox, while the warrant commanded the arrest of J. I. Cox. The plaintiff resided near Belton, Mo., and it is manifest from the testimony that he was the man whom the postmaster had reported as living near that place, and whom the post

office inspector had in mind when he laid the matter before the United States attorney and sued out the warrant, so that the very person was arrested for whom the warrant was intended. It is true that the inspector supposed, when he sued out the warrant, that the plaintiff was the man who had committed the robbery at Boulder, Colo., and for that reason the warrant recited that he was "late of Boulder county, in the state of Colorado," but it commanded the arrest of "J. I. Cox, alias George Rogers, wherever found in your district"; and, to justify his act in making the arrest, the marshal was neither bound to prove that the plaintiff was late of Boulder county, Colo., or that he had actually committed the robbery, these being matters to be determined by a petit jury. The question to be decided, so far as the marshal is concerned, is whether, under a writ commanding the arrest of J. I. Cox, he had the right to arrest James T. Cox, it being shown beyond peradventure that the person who was taken into custody was the one for whom the warrant was intended. This, we think, was a question of law which the court, and not the jury, was required to determine.

It is claimed that the warrant in question did not "particularly describe" the plaintiff within the meaning of those words as used in the fourth amendment to the Constitution of the United States, and that for this reason it afforded no protection to the officer who served it. It is not expressly contended, as we understand, that the plaintiff was not particularly described because his full given name "James" was not written in the warrant. Such a contention, if made, could not be upheld, because the modern doctrine is that a man may be sufficiently described by the initial letter of his given name, as well as by the name 'n full, and this is so especially where a man is commonly designated by the initial letter of his given name, and where he answers to that name and makes a practice of writing his name in that way in ordinary business transactions. Ferguson v. Smith, 10 Kan. 398, 402; State of Iowa v. Van Auken, 98 Iowa, 674, 677, 68 N. W. 454; Oakley v. Pegler, 30 Neb. 628, 632, 46 N. W. 920; Casey v. People, 159 Ill. 267, 42 N. E. 882. See, also, Breedlove v. Nicolet, 7 Pet. 413, 430, 8 L. Ed. 731; United States v. Janes (D. C.) 74 Fed. 543. The record before us contains abundant evidence that the plaintiff usually went by the name and was often referred to as J. T. Cox. He stated on his cross-examination that his name was J. T. Cox, and that letters intended for him were thus addressed and received, and that he had letters in his possession which were thus addressed. We are of opinion, therefore, that a warrant describing him in that manner would be a sufficient protection for the officer who executed it. We can conceive of no reason why a man who responds, when addressed, to the name of J. T. Cox, and is so called by his acquaintances, should challenge the validity of a warrant which thus describes him.

The principal objection to the warrant appears to be that the initials of the plaintiff's name as set forth in the warrant were J. I. instead of J. T., his true initials; but this objection is answered and overcome by the rule that the law knows or recognizes but one given name, and that the omission of the initial letter of the middle given name, or a mistake made in the initial letter of that name, is not regarded as material. This doctrine is announced in a large number of cases, and

seems to be well settled. Thus, in Games v. Dunn, 14 Pet. 322, 327, 10 L. Ed. 476, the court observed: "The law knows of but one Christian name, and the omission or insertion of the middle name or of the initial letter of that name is immaterial." In the case of People v. Lockwood, 6 Cal. 205, an indictment for murder charged the killing of one J. P. Beatty, while the evidence showed that the name of the deceased was J. T. Beatty. The court held that the misnomer in question was not material, the middle name not being regarded in law as a part of the name of the deceased. See, also, Franklin v. Talmadge, 5 Johns. 84; English v. State, 30 Tex. App. 470, 18 S. W. 94; Delphino v. State, 11 Tex. App. 30; Orme v. Shephard, 7 Mo. 606. The rule that one's middle name is not recognized in law does not apply to a mistake made in the initial letter of the first Christian name. It seems that a mistake made in the initial letter of the first Christian name in a criminal proceeding amounts to a material variance, but not so if the mistake is in the initial letter of the middle name. English v. State, supra.

In the case of West v. Cabell, 153 U. S. 78, 14 Sup. Ct. 752, 38 L. Ed. 643, upon which counsel for the plaintiff in error seems to place his chief reliance, a warrant was issued for the arrest of James West, without other description, under which the officer arrested Vandy M. West, who, as the evidence showed, was never known or called by any other name. It was held that such a warrant afforded no protection to the officer, in that it contained no description of the party to be arrested, and that because it contained no such description it was incompetent to show, in an action for false imprisonment, that Vandy M. West, a person not described, was in fact the person for whom the warrant was intended. The case at bar, in our judgment, is essentially a different case. The warrant did contain a description of the plaintiff, in that it gave his family name and the true initial letter of his first Christian name, this being the initial which he commonly used and by which he was generally known and addressed. Now, as the law recognizes but one Christian name, treating the middle name as immaterial, the description contained in the warrant was sufficient to identify the plaintiff, and a description of that kind must be regarded as sufficient to satisfy the mandate of the Constitution that a warrant shall particularly describe the party to be arrested. At all events, a description which is sufficient to enable the officer to identify the arrested party should serve to protect the officer, especially when it appears that it was served on the party for whom it was intended.

The judgment below is accordingly affirmed.