[Civ. No. 7800. Second Appellate District, Division One.—May 2, 1934.]

CLIFFORD COOK, Respondent, v. THE SINGER SEW-ING MACHINE COMPANY (a Corporation) et al., Defendants; D. M. FOUNTAIN, Appellant.

Erwin P. Werner, City Attorney, Frederick von Schrader, Assistant City Attorney, and George A. Dockweiler and Sam H. Erwin, Deputies City Attorney, for Appellant.

J. Q. Adams and L. B. Binford for Respondent.

HOUSER, J.—Defendant appeals from a judgment that was rendered against him and in favor of plaintiff in an action for damages alleged to have resulted from a false imprisonment of plaintiff by defendant.

From the record herein, in substance, it appears that during a period of time when plaintiff was employed as a salesman by the Singer Sewing Machine Company, he sold on the installment plan and thereafter delivered a sewing machine to each of two persons. Shortly thereafter plaintiff left the employ of the Singer Sewing Machine Company and entered the employ of another sewing machine company. In the course of events, each of the purchasers of said sewing machines notified the Singer Sewing Machine Company that she did not wish to proceed with the purchase of the sewing machine which theretofore had been delivered to her, but that she wished the Singer Sewing Machine Company to "repossess" it;—following which a man "in a dark sedan automobile", who falsely represented himself as being the agent of the Singer Sewing Machine Company, unlawfully and feloniously claimed and took possession of said sewing machine. On the discovery by the Singer Sewing Machine Company of the theft of said sewing machine, it reported such fact to the Los Angeles police; whereupon defendant, who was a police officer, and another member of the police force, were duly assigned to investigate the matter. In the course of such investigation, defendant interviewed each of two officers of the Singer Sewing Machine Company, one of the women to whom one of the sewing machines originally had been delivered, and an officer of the sewing machine company with whom plaintiff was then employed. From such source of information, defendant was told that one Acosta, who as a sewing machine salesman was a former coemployee of plaintiff, had stated that he knew the whereabouts of the two stolen sewing machines; that Acosta and plaintiff "worked" together, were

often seen together, and that together they "hung around pool halls"; that on the night of the day on which the two sewing machines were stolen, plaintiff was seen with Acosta in a dark automobile sedan, which the latter had either "borrowed or stolen" from one George French, and that the "automobile that had picked up the stolen machines was a dark sedan, and that the car that picked up one of them was owned by one George French"; that plaintiff was "short of funds", and that before leaving the employ of the Singer Sewing Machine Company, without its knowledge or consent, plaintiff had pawned two other of its sewing machines; that Acosta also had misappropriated one sewing machine that belonged to his employer; that when asked by defendant if he was acquainted with plaintiff, at first Acosta denied that he was acquainted with him, but later admitted the fact. Acting upon such information, defendant placed plaintiff under arrest and thereupon took him to the police station, where he was detained for a space of five hours thence next ensuing, at the expiration of which time, following further investigation of facts connected with the matter, plaintiff was released from custody.

In substance, subdivision 3 of section 836 of the Penal Code provides that a peace officer may make an arrest "when a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it".

The principal question raised by appellant is whether, in view of the evidence regarding the information which defendant had received, he had "reasonable cause for believing" the plaintiff had stolen the sewing machines.

The action in the case of *Potter* v. *Seale*, 8 Cal. 217, was one for damages which resulted from an alleged malicious prosecution. It was there said that "probable cause is a *suspicion* founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true". And the definition thus announced has received judicial recognition and approval at least in *Michel* v. *Smith*, 188 Cal. 199, 205 [205 Pac. 113], and in *Murphy* v. *Murray*, 74 Cal. App. 726, 731 [241 Pac. 938]. The case of *People* v. *Kilvington*, 104 Cal. 86, 92 [37 Pac. 799, 43 Am. St. Rep. 73], contains a quotation taken from *Bacon* v. *Towne*, 4 Cush. (Mass.) 217, which may be more satisfy-

ing, to wit, that "there must be such a state of facts as would lead a man of ordinary care and prudence to believe, or entertain an honest and strong suspicion, that the person is guilty". And again, as a *résumé* of several authorities cited in the footnote thereto, the rule announced in 2 Ruling Case Law, 451, is that "probable cause for an arrest has been defined to be a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty". However, in *Gulf etc. Ry. Co.* v. *Shieder*, 88 Tex. 152 [30 S. W. 902, 28 L. R. A. 538], it is said that the word "suspicion" is defined as being "the imagination of the existence of something without proof, or upon very slight evidence, or upon no evidence at all". In substance, the same definition of the word is given in Webster's New International Dictionary. To the same effect, see *State* v. *Hall*, (Mo. App.) 285 S. W. 1009. And in *Giddens* v. *Mirk*, 4 Ga. 364, 370, the court said that "suspicion" is weaker than "belief".

In the case of *Union Indemnity Co.* v. *Webster*, 218 Ala. 468 [118 So. 794, 801], wherein numerous authorities were cited in support of the rule there announced, it was held that (syllabus):

"Under Code 1923, section 3263, permitting arrest by officer without warrant, where he has reasonable cause to believe person arrested has committed a felony, 'reasonable cause to believe' involves a state of facts or circumstances such as would lead a reasonable man of ordinary caution, acting impartially, reasonably, and without prejudice, to believe the person arrested to be guilty, . . . "

It is apparent that "suspicion" requires no real foundation for its existence. "Belief" is necessarily based upon at least assumed facts. It would therefore seem a "contradiction of terms" to say in effect that "suspicion" is a conclusion or condition of mind which results from a consideration of pertinent facts and circumstances by a man of ordinary care and prudence. *That* is what engenders "belief"; and "belief" (rather than "suspicion", founded upon "reasonable cause" therefor), that the person proposed to be arrested has in fact committed a felony, is what is required by the provisions of section 836 of the Penal Code before a peace officer will be justified in making such arrest.

Stated negatively, in and of itself mere suspicion will not suffice as a legal reason for an arrest. But in order that, without a warrant so to do, an arrest by a peace officer of a person for the commission by the latter of a crime amounting to a felony, may be legally justified, it must appear that his "suspicion" of the guilt of the person proposed to be arrested, or his belief in the assumed fact that the person has committed a felony, be properly founded upon relevant facts, circumstances, or credible information conveyed to him. (5 Cor. Jur. 418, and authorities there cited.) But in that connection, before making an arrest the officer is not required to have definitely and finally established the truth of the facts or the certainty of the information upon which he relies. His justification primarily depends upon the quality and quantity of the assumed evidence presented to him, rather than upon its conclusiveness as to facts. As is said in *People* v. *Kilvington*, 104 Cal. 86, 93 [37 Pac. 799, 801, 43 Am. St. Rep. 73] : "In considering this question of probable cause upon the part of the defendant to arrest the deceased, we are to look only at the facts and circumstances presented to him at the time he was required to act. . . . " Otherwise stated, " . . . probable cause does not depend on the actual state of the case in point of fact, as it may turn out upon legal investigation, but on knowledge of facts and circumstances, which would be sufficient to induce a reasonable belief in the truth of the accusation." (2 R. C. L. 451.)

To reiterate, it is not whether the facts upon which the officer acted would support the verdict of "guilty" and the ensuing judgment rendered thereon, but rather whether to the lay mind, or to the mind of a reasonable, prudent man, the facts were sufficient to afford "reasonable cause for believing" that the person arrested had committed the particular felony which related to such facts. (25 Cor. Jur. 473, and authorities there cited.)

Judged by such authorities, however apparent it may be to the legal mind that many of the "facts and circumstances" herein, if submitted to judicial inquiry, would be deemed hearsay, irrelevant and inadmissible as evidence of the guilt of the plaintiff of the offense of grand theft, nevertheless, acting in the capacity of peace officer, in forming his "belief", defendant was entitled to be in-

fluenced by such "facts and circumstances" as any reasonable and prudent man probably would have been influenced thereby, and if on consideration of the assumed facts and circumstances hereinbefore set forth, it should appear that they furnished "reasonable cause for believing" that plaintiff had committed the felony, by stealing the sewing machines in question,—it should follow that defendant was acting within his legal right in placing plaintiff under arrest.

With so much in mind, and adverting to the "facts and circumstances" which defendant had a right to take into consideration, it is obvious that, while not conclusive, or possibly not even convincing, of plaintiff's guilt in the premises, to a greater or lesser extent, dependent upon the weight to be attached thereto, they did indicate, if not an actual physical felonious taking of the sewing machines by plaintiff, a conscious, intentional and deliberate participation by him in the criminal act. Considering some of the outstanding "facts", it was plaintiff who had sold the sewing machines and he knew their location. Presumably he had some knowledge of the ability of, or the intention of, the persons to whom they had been sold to make payment of the installments of the purchase price of the sewing machines as such installments fell due. He was "short of funds"; he was a close associate of Acosta, who was an employee of the Singer Sewing Machine Company, and who well may have known of the several requests of the purchasers of the sewing machines that the respective machines be "repossessed". The automobile in which one of the sewing machines was transported after it was stolen was in the possession of Acosta on the day on which the theft was committed; and after such theft occurred, plaintiff was seen riding with Acosta in the same automobile. Besides which, Acosta had made the statement that he knew the whereabouts of the stolen sewing machines. Even without giving weight to the fact that theretofore plaintiff and Acosta each had been guilty of misappropriating property of which the Singer Sewing Machine Company was the owner, and casting aside as immaterial the false statement made by Acosta regarding his acquaintance with plaintiff, it is most probable that a reasonably prudent person, in possession of the facts to which attention hereinbefore has been specially

directed, would have an honest and sincere belief that plaintiff had been a conscious and intentional participant in the commission of the criminal offense. In addition to all of which, the good faith of defendant in making the arrest is amply evidenced by the fact that, before arresting plaintiff, he interviewed four different persons from whom the information was obtained and upon which he confidently relied in his action in the premises. It is the conclusion of this court that, considering the "facts and circumstances" hereinbefore set forth, defendant was legally justified in making the arrest of plaintiff.

No other point suggested by appellant as constituting a just ground for reversal of the judgment requires consideration by this court.

It is ordered that the judgment be and it is reversed.

Conrey, P. J., and York, J., concurred.