[Civ. No. 14418. Second Dist., Div. Two. Oct. 25, 1944.]

ALBERT LEE WALTON, Respondent, v. ARTHUR J. WILL et al., Defendants; HELEN RAMAGE et al., Appellants.

510

J. H. O'Connor, County Counsel, Ernest Purdum, Deputy County Counsel, Ray L. Chesebro, City Attorney, Donald M. Redwine, Assistant City Attorney, and Lester L. Lev, Deputy City Attorney, for Appellants.

Albert D. White and Julian P. Van Dyke for Respondent.

WOOD (W. J.), J.—Plaintiff commenced this action to recover damages for false imprisonment, naming as party defendants Arthur J. Will, Superintendent of Charities of Los Angeles County, his assistant Lawrence C. Schreiber, the surety on their bonds, Helen Ramage, a social worker in the Department of Charities, and Police Officers Puissegur and Johnson. Judgment for $1,420 was entered against defendants Ramage and Puissegur only. Defendant Johnson was not served with process. The defendants against whom judgment was entered have appealed from the judgment and defendant Ramage has filed a purported appeal from the order denying her motion for a new trial.

A warrant was issued by the Municipal Court of the City of Los Angeles on January 21, 1935, for the arrest of one Albert Walton on the charge of failure to provide for his minor children. Defendant Ramage commenced work as a social worker for the county of Los Angeles in 1937. One of her duties was to attempt to locate parents who were not providing for their children. In performing this duty she followed instructions outlined in a manual of operations in use in the department. The warrant naming Albert Walton had not been served and defendant Ramage, in making inquiries concerning his whereabouts, received from the Department of Motor Vehicles a list of five persons named Albert Walton who had purchased motor vehicles. She eliminated three of these names and made inquiries concerning the Albert Walton who, according to notations on the list, lived at 119 Tichenor Street in Compton and who was purchasing an automobile through the Bank of America Trust and Savings Association. Early in March, 1942, she telephoned to the Bank of America at Compton and talked to someone whose name she did not obtain. She told the party at the bank the object of her call and the information which she had in her office concerning the man named in the warrant. She testified at the trial that the person at the bank told her that the description "corresponded" with the man who was doing business at the bank. She then informed her superior in the office that she "had located the Albert Walton that fit the description of the man" sought and the warrant was placed in the hands of the police department for service.

Upon receipt of the warrant Officer Puissegur learned from the paper attached to the warrant and from a conversation

with Mrs. Eisenberg, sister-in-law of the man named in the warrant, that Albert Walton was a printer whose last known address was at Palm Springs; that he was a man who could pass anywhere from thirty-five to fifty years of age; that his height was from five feet four inches to five feet eight inches; that he weighed about 140 pounds; that he was an Englishman; and that he had married a second time and that one child was born to the second wife. With this information Officer Puissegur went on March 5, 1942, to 119 Tichenor Street, Compton, placed plaintiff under arrest and took him to the jail, where he remained until his release on bail, a period of two days and three nights. When officer Puissegur notified plaintiff of his purpose to arrest him on the warrant plaintiff told him that he had lived in Compton for ten years continuously, that he had no minor children, his youngest child then being a man twenty-four years of age who was working with him at the "boat yards." He denied that he had ever lived in Palm Springs and stated that he did not know Mrs. Eisenberg. He stated that he was a painter and sixty-three years of age. When the officer asked him if he had had trouble with his wife he replied that he had and the officer asked him the whereabouts of his wife. Plaintiff replied: "She is living with her mother on Maple Street. If you will drive by there I can prove by her I am telling the truth." Officer Puissegur declined to take plaintiff to the Maple Street address. The reporter's transcript of the testimony taken on April 20, 1943, bears the following notation written by the trial judge in ink on the page in which the first part of plaintiff's testimony appears: "Said Albert Walton as he then appeared in court was approximately 5 feet 9 inches in height, approximately 165 pounds in weight; that he had blue eyes, light complexion, white hair, was 64 years of age, and his manner of speech was that of a native born American."

■ The protection given officers of the law in serving a warrant of arrest is not unlimited. An officer is not discharged from liability if he fails to take precaution to ascertain if the person about to be arrested is the party against whom the warrant was issued or if he refuses to act upon information offered to him which would have disclosed that a mistake was being made by serving the warrant upon the wrong person. (22 Am.Jur. § 73, p. 405.) ■ The duty unquestionably

rests upon an officer to promptly execute a warrant but the officer also owes a duty to the public and to the party about to be arrested. If he carelessly arrests the wrong party he is liable for the damages caused. ''He should use prudence and diligence to find out if the party arrested is the party described in his warrant.'' (*Miller* v. *Fano,* 134 Cal. 103, 109 [66 P. 183].) Defendants rely upon *Kalish* v. *White,* 36 Cal.App. 604 [173 P. 494], a case in which a directed verdict for the defendant was upheld and in which the party arrested bore the same name as the party named in the warrant. It is important to note that the reviewing court, in upholding the action of the trial court, stated that ''by inference it appears that he [the plaintiff] measured up to the furnished description as far as build, weight, complexion and nativity were concerned.'' It is also important to note that in the Kalish case the court stated that, ''a warrant is no defense to an officer who arrests and refuses to release the wrong person, although bearing the same name, where an investigation would have disclosed the fact of his innocence.'' (*Clark* v. *Winn,* 19 Tex.Civ.App. 223 [46 S.W. 915].)

In the case now before us the description furnished Officer Puissegur measured up to the description of plaintiff as to complexion, but it varied widely in the description as to build, weight and nativity. Before Officer Puissegur arrested plaintiff he had been informed that he was to serve a warrant seven years old upon a printer last known to be a resident of Palm Springs, a man approximately five feet six inches tall, weighing approximately 140 pounds, approximately forty-three years of age and an Englishman by birth, a man who had married a second time with a child by the second wife. Instead of arresting a man who answered that description he arrested a painter who had never lived in Palm Springs but who had lived continuously for ten years in Compton, who was five feet nine inches tall, weighed 165 pounds, sixty-three years of age, and was an American by birth and speech, a man who had not married a second time. With these marked differences in the description of the man to be arrested and the man who was before him protesting his innocence and asserting that he had no minor children, the officer refused the simple and fair request of plaintiff that he be taken a very short distance from the most direct route from Compton to

the jail, where he could establish his innocence by an interview with his former wife. Manifestly a very simple investigation would have disclosed to Officer Puissegur that he was arresting the wrong person. The trial court found that defendant Puissegur incarcerated plaintiff "wrongfully, carelessly and negligently." We are satisfied that the evidence is ample to sustain this finding.

Defendant Ramage is in a far different position from that of defendant Puissegur. She did not see plaintiff until after his release from the jail on bail. She took no part in his incarceration other than to furnish to her superiors in one of the county departments of Los Angeles County information which she had received on the telephone from someone in the Compton branch of the Bank of America. The warrant was thereafter sent by others in her office to the police department for execution. The fact that she notified another party in her own office that she "had located Albert Walton that fit the description" of the man wanted did not make her responsible for the lack of diligence on the part of the arresting officer in arresting and detaining plaintiff, notwithstanding her report resulted in placing the warrant in the hands of the officer for execution. By our decision that defendant Ramage is not legally liable for damages suffered by plaintiff no commendation is intended for the inadequate investigation which she made to locate the man to be arrested.

The judgment against defendant Puissegur is affirmed. The judgment against defendant Ramage is reversed. Her purported appeal from the order denying the motion for a new trial is dismissed.

McComb, J., concurred.

MOORE, P. J.—Although I concur in the reversal of the judgment as against defendant Ramage, I dissent from that part of the majority opinion affirming the judgment as against defendant Puissegur.

The complaint alleged the false imprisonment of respondent by a number of defendants. Judgment was entered against only two: Helen Ramage and R. F. Puissegur. They have taken separate appeals. That of Miss Ramage is correctly decided by the majority opinion. I shall now endeavor to demonstrate that because of the public interest as well as

the injustice to the officer the judgment against him should also be reversed.

On the day of the arrest appellant Puissegur and one William Johnson, police officers, had been assigned to the "Warrant Squad" whose duties were to serve warrants of arrest. They received in the regular course of their duties the warrant for Albert Walton attached to which were memoranda that the party accused resided at 119 East Tichenor Street in Compton. The notations contained the further information that he was a printer; that he might deny his identity; that his wife's sister, whose name and telephone number were attached, could identify him; that he had at one time owned a sign shop in Palm Springs. After receiving the warrant Puissegur was advised by the wife's sister that the man sought for was a blond, five feet four inches to five feet eight inches tall, of English descent, slender, weighed about 140 pounds and was between thirty-five and fifty-five years of age. After attaching such data to the memoranda already with the warrant, the officers called at the Compton address and found respondent. Upon his admission that his name was Albert Walton he was placed under arrest and lodged in jail. After two days and nights he effected his release presumably by depositing bail. At the preliminary hearing after a witness had stated that plaintiff was not the accused in that case the complaint was dismissed and respondent was discharged. This action followed.

There was no reckless disregard of the rights of respondent in making his arrest. A reasonable degree of care was exercised in the effort to ascertain his identity. Not only did the officers carry his name and address but respondent admitted he was Albert Walton. The warrant had been issued in January, 1935, for failure to provide for minor children. At that time respondent had a minor child. On the night of his arrest in March, 1942, he told the officers that he had had trouble with his wife and was living separate and apart from her. The officers testified that he said he was divorced. The description of the accused furnished to the officers contained the word printer, which sounds like painter. It referred to Albert Walton as owner of a sign shop: respondent was a painter. It described him as five feet four inches to five feet eight inches in height: respondent was five feet nine inches. They were looking for a blond: respondent has blue eyes,

light complexion and at the trial in 1943 had white hair. While they searched for a man of 140 pounds in 1935, in 1943 respondent weighed 165. In all respects the description of the accused was either identical with, or closely approximated, that of respondent. This supplied the probable cause for the arrest. Puissegur exercised reasonable care to identify his party. Having a warrant valid in form and issued by a court of competent jurisdiction it was his duty to execute it and in so doing he incurred no liability. (*Malone* v. *Carey,* 17 Cal.App.2d 505 [62 P.2d 166]; *Kalish* v. *White,* 36 Cal. App. 604 [173 P. 494]; *Pankewicz* v. *Jess,* 27 Cal.App. 340 [149 P. 997].) To hold in jail a person bearing the name of the accused, pursuant to valid process, after exercising due diligence, under the honest belief that the arrestee is the party named in the warrant the officer incurs no liability. (*Schneider* v. *Kessler,* 97 F.2d 542.) A refusal by the officer to serve such a warrant would have subjected him to punishment for contempt. (*Pankewicz* v. *Jess, supra.*) An officer is justified in making the arrest of a person to whom the name applies with complete accuracy although he may suspect that the person designated is not the accused. (Rest. Torts, vol. I, p. 286.)

The fact that he had a middle name was immaterial. Men are generally called by their first names. The law recognizes but one given name and the omission of the middle name or a mistake in the initial letter thereof is not material. (*Cox* v. *Durham,* 128 F. 870 [63 C.C.A. 338].)

The claim of bad faith on the part of the officers is based upon the contention that respondent protested his innocence at the time of arrest. No such reward should be accorded to deceit of, or resistance to, an arresting officer. Since the vilest of wretches have made solemn protestations of innocence, the only safe guiding rule for courts to follow in a case of false imprisonment is to determine whether probable cause is or is not shown. If declarations of nonidentity were heeded, such disavowals would be likely to result in the defeat of justice and to incur liability on the part of the officer; whereas, if probable cause is shown, the honest officer acting in good faith will be protected for fulfilling his bounden duty. (*Michel* v. *Smith,* 188 Cal. 199 [205 P. 113].)

Although many situations arise wherein the officer should investigate the claims of asserted innocence, the law does not

require him to pursue the inquiry requested by the person who reasonably appears to be the party named in the warrant or who has been pointed out as a felon by a responsible person, although no warrant has been issued. The duty to make the arrest does not depend upon the results of further investigation. (*Dowdell* v. *Owl Drug Co.*, 121 Cal.App. 316, 319 [8 P.2d 890].) The interests of public safety do not require that the officer pursue inquiry further at the request of the party about to be arrested. He is required to possess only sufficient information to constitute probable cause. (*Ibid.*) In determining whether there was probable cause for the arrest Puissegur was not called upon to show that he exhausted all sources of information suggested by respondent. (*Johnson* v. *Southern Pacific Co.*, 157 Cal. 333, 338 [107 P. 611].) Had the parties to whom respondent referred denied that he was the person named in the warrant, the officers would not have been obliged to accept the denial and to release him. It often occurs that a wife's fury has abated by the time of her husband's arrest for neglect and she then joins in his effort to defeat the charge.

In reaching a determination that there was probable cause the court is to be governed by the circumstances of the officer at the time he came face to face with the person who appeared to be the object of his search. If such circumstances were sufficient to induce a reasonable person acting impartially and without prejudice to believe that he had found the accused party, probable cause for the arrest was established. (*Cook* v. *Singer Sewing Machine Co.*, 138 Cal.App. 418, 422 [32 P.2d 430].) Neither was the officer's defense defeated because at the trial it was shown that the accused was not the party named in the warrant. Officers employed to make arrests are not required to be doctors of the law or to possess the genius of Sherlock Holmes. They are required only to be reasonably intelligent and to exercise reasonable diligence. If they undertook to inquire into every clue as to the identity of a person believed to be the accused, they would thereby usurp the powers of the committing magistrate and delay the vindication of the law. (*Dunlap* v. *New Zealand Fire & Marine Ins. Co.*, 109 Cal. 365, 371 [42 P. 29].)

Every citizen owes allegiance to the general welfare to the extent of suffering some inconvenience if need be. When crime stalks through the land the sheriff may increase his

manpower by ordering any able-bodied male person above the age of eighteen years to join the ranks of a *posse comitatus* (Pen. Code, § 150) to apprehend a hunted miscreant, even though such assignment may require one to sleep in a bog and to face the machine gun of a Dillinger. If such service may be exacted by the sovereign power to protect the honor of the state or to insure the safety of society, it is with poor grace that one seeks pecuniary compensation for the discomfiture of two days' confinement in a jail because he was unfortunately imprisoned under the honest belief of the officer that he was the author of a serious crime. To be subjected to such inconvenience, however regrettable, is but one of the infrequent penalties of membership in a complex society and should be endured with stoicism.

The judgment should be reversed with instructions to dismiss the action.

A petition for a rehearing was denied November 16, 1944. Moore, P. J., voted for a rehearing as to appellant Puissegur. Appellant Puissegur's petition for a hearing by the Supreme Court was denied December 21, 1944.