[S. F. No. 19061. In Bank. Dec. 3, 1954.]

RICHARD A. PETERSON, Respondent, v. MERRITT
DAVID ROBISON, JR., Appellant.

Cosgriff, Carr, McClellan & Ingersoll, Luther M. Carr and Albert J. Horn for Appellant.

Roy W. Seagraves for Respondent.

SCHAUER, J.—This action for "wrongful arrest and imprisonment" was tried by the court without a jury. Plaintiff recovered judgment for $900. Defendant moved for a new trial. The trial court ordered that the motion would be denied if plaintiff would consent to the reduction of the amount of the judgment to $700. Plaintiff consented to such modification. From the judgment as modified defendant appeals. We have concluded that the evidence and the supportable findings fail to warrant the conclusion that plaintiff is entitled to any recovery from defendant and, hence, that the judgment should be reversed.

On Friday night, July 20, 1951, in the city of Burlingame, plaintiff, having shortly theretofore drunk four "old fashioneds," moved his car from the position in which it was parked, crashed into the parked, unattended car of defendant, and knocked defendant's car onto the sidewalk with such force that it broke a parking meter. Plaintiff wrote his name, address, and telephone number (but not a statement of the ownership of his car, its license number or the circumstances of the incident, as required by section 483 of the California Vehicle Code) on a slip of paper, put the paper under the windshield wiper of defendant's car, and drove away. According to a witness who saw plaintiff just before and again just after plaintiff struck defendant's car, but who did not see the actual collision, plaintiff appeared intoxicated; plaintiff testified that he was not intoxicated but admitted that within approximately two hours before the crash he had drunk four "old fashioneds" and, as to being accustomed to drinking, that "maybe a couple of times a week I will have drinks at home—a couple or three."

Shortly after the collision defendant and his wife returned to their car. A bystander handed defendant the paper on which plaintiff had written his name; the bystander had added the license number and make of plaintiff's car. Defendant, particularly because he noted the damage to city property, immediately reported the collision, and the broken parking meter, by telephone to the Burlingame police. Police Officer Watson at once came to the scene and radioed a further report of the matter to the police station.

Police Sergeant Todd, on duty at the station, acting on his own initiative, sent an "all points" radio bulletin describing plaintiff's car and asked that the driver be placed in custody. Pursuant to this radio bulletin plaintiff, who was weaving from one lane to another as he drove toward San Francisco, was apprehended, placed in custody, and brought to the police station. In the meantime, at Officer Watson's direction, defendant, with his wife, went to the police station. There Sergeant Todd asked defendant to sign a form requesting the help of the Burlingame Police Department in the making of a citizen's arrest, and said that to effect such an arrest defendant should put his hand on plaintiff's shoulder and say "I arrest you in the name of the law." Defendant said to Sergeant Todd, "Why should I arrest this man? I have no malice toward him." Defendant's wife suggested, "perhaps we should call in our lawyer." Sergeant Todd replied that he knew how to handle the matter. Defendant then signed the following form:

"Citizen's Arrest Form: Date   July 20 1951
Time   10:10   A.M.-P.M.

"At the above date and time I have requested assistance from the Burlingame Police Department, on a complaint committed in my presence on private property. I am making a citizen's arrest on the person of Richard Aubrey Peterson relationship None and am requesting the Police to assume custody and detention until such time as may be required by me to obtain a written and signed complaint.
"Officer R. J. Watson   Star 5

"Signed M. D. Robison, Jr.

"Complainant"

As above related, South San Francisco police officers in a radio car, who had been alerted by the "all points" bulletin,

had already arrested[1] plaintiff, i.e., they had observed his somewhat erratic driving, had ordered him to stop, and removed him from, and taken temporary possession of, his car. In the opinion of the arresting officers plaintiff was under the influence of intoxicating liquor. The officers informed him that he was under arrest and would have to ''come over to the South San Francisco Police Station.'' One of the South San Francisco officers drove plaintiff to the South San Francisco police station in the radio car while the other officer drove plaintiff's car. Although the South San Francisco police were of the opinion that plaintiff had been driving while under the influence of intoxicating liquor in violation of section 502 of the Vehicle Code, they did not file any charge against him; they held him ''En route to Burlingame, 481 C.V.C.,''[2] and radioed to the Burlingame police that they had plaintiff in custody.

[1] Police Officer Bianchini of South San Francisco testified that he received the all-points bulletin from the Burlingame Police Department while he and Officer Johnston were driving on El Camino Real, that he observed the plaintiff's car and followed it; the ''vehicle was weaving slightly from the slow to the fast lane, crossing the single white line, so I . . . turned on my red light and blew the siren''; that after plaintiff had stopped he talked with him; that ''in my estimation, the man was drinking. He shouldn't have been driving a vehicle . . . So I told the gentleman he would have to come to the South San Francisco Police Station, and he walked over to the police car with me, and I informed Officer Johnston to drive this gentleman's vehicle back to the Police Station, which he did . . . We booked the gentleman—— started booking the gentleman, put out a cancellation—— we informed the station . . . we had picked up the vehicle, had taken this gentleman into custody, were taking him to the South San Francisco Police Department, and for them to notify the Burlingame Police Department to pick up the man there, which they did; . . . it was approximately 9:43 P. M. when the man was placed under arrest. And I was booking him and Officer Watson of the Burlingame Police Department walked in . . . Then I had Officer Watson sign off our arrest log and turned him over to Officer Watson, and the vehicle was impounded at Simmon's Garage in South San Francisco . . . Q. Was he placed under arrest by you or Officer Johnston? A. We notified him—— any time a man is detained he is automatically under arrest, by a police officer. Q. Was he in your custody continuously from the time you stopped his automobile on El Camino Real until he was turned over to Officer Watson? A. That's right, sir.''

Officer Johnston testified, ''We placed him [Peterson] under arrest for the Burlingame Police Department . . . We told him that we would take him—— place him under arrest for the Burlingame Police Department . . . He had a strong odor of alcohol on his breath . . . He was unsteady on his feet . . . [His speech] was slightly slurred . . . [I formed the opinion] that he was under the influence of intoxicating liquors.''

[2] Section 481, which concerns the duties of the driver of a vehicle involved in an accident which results only in property damage, does not apply where such driver collides with an unattended vehicle. The re-

Officer Watson of the Burlingame police picked up plaintiff at the South San Francisco police station and brought him to the Burlingame police station. There is evidence that plaintiff at this time appeared to be under the influence of liquor. Defendant, pursuant to Sergeant Todd's direction, placed his hand upon plaintiff's shoulder and said, ''I arrest you in the name of the law.'' Defendant testified that he did this ''Only at the suggestion of the authorities'' and that he did not know ''specifically'' for what he arrested plaintiff. Sergeant Todd then told defendant, ''Now, from here on we'll handle everything. . . . You just go on home,'' and defendant and his wife left the police station.

Each of the Burlingame police officers testified that he did not personally ''arrest'' plaintiff for violation of Burlingame City Ordinance 1279[3]; Sergeant Todd testified that there was a ''dual charge'' against Peterson; that ''the 481 C.V.C. has to do with Mr. Robison's case''; that ''He [Peterson] is charged with two charges—in and about, and 481. We take care of the in and about, and he is taking care of the 481,'' and that ''The Burlingame Police Department'' made the arrest ''for the 1279.'' Sergeant Todd ordered plaintiff booked and jailed. The records of the Burlingame Police Department state, under the heading ''Charge,'' that plaintiff was held for violation of ''Sec. 1279, in and about'' and ''481, C.V.C.'' Actually, no pleading charging crime was filed against plaintiff. There was a standing rule of the Burlingame Police Department, originally promulgated by the chief of police, that intoxicated persons were not bailable and were not to be released ''until they sober up.'' Sergeant Todd testified that if defendant had not made the citizen's arrest of plaintiff, plaintiff nevertheless would have been held in jail; ''We would have jailed him with 1279, in and about a car. . . . He would have been placed in custody for being intoxicated, until he straightened out, and then he would have been admitted to bail.''

---

quirements of section 483, which prescribes the duties of one who strikes an unattended vehicle, had not been met by plaintiff; that section provides that such driver shall ''either locate and notify the operator or owner of such vehicle of the name and address of the driver and owner of the vehicle striking the unattended vehicle or shall leave in a conspicuous place in the vehicle struck a written notice giving the name and address of the driver and of the owner of the vehicle doing the striking and a statement of the circumstances thereof and shall within twenty-four hours forward a similar notice to the police department. . . .''

[3]Burlingame City Ordinance 1279 provides for the punishment of persons drunk in a public place and drunk in and about an automobile.

Plaintiff was placed in a jail cell at about 10:30 p. m. on Friday. At about midnight Sergeant Todd saw that plaintiff was "coming out of it" and "asked him if he would like to be admitted to bail"[4]; plaintiff replied that "He didn't want to be admitted to bail." On Saturday morning at about 8:30 plaintiff's wife came to the jail with the required bail ($150) and plaintiff was released.

Plaintiff was asked "to appear before the Police Judge" on Tuesday morning. On that morning defendant spoke with the police judge in chambers and refused to sign a complaint against plaintiff. Plaintiff then spoke with the police judge in chambers and his bail was exonerated. No warrant was ever issued and no complaint against plaintiff was ever signed in connection with the matter.

No liability can be predicated merely on defendant's reporting to the police facts concerning the damaging of his car and the city's parking meter. A private person does not become liable for false imprisonment when in good faith he gives information—even mistaken information—to the proper authorities though such information may be the principal cause of plaintiff's imprisonment. (*Miller* v. *Fano* (1901), 134 Cal. 103, 106 [66 P. 183]; *Gogue* v. *MacDonald* (1950), 35 Cal.2d 482, 487 [218 P.2d 542, 21 A.L.R.2d 639]; *Hughes* v. *Oreb* (1951), 36 Cal.2d 854, 859 [228 P.2d 550]; *Turner* v. *Mellon* (1953), 41 Cal.2d 45, 48 [257 P.2d 15]; *Walton* v. *Will* (1944), 66 Cal.App.2d 509, 514 [152 P.2d 639].) Defendant relies upon cases which announce this rule and it seems obvious that up to the time plaintiff was brought to the police station in Burlingame that rule would protect defendant. However, it is undisputed that subsequent to that time defendant did more than merely stand on the facts which he had reported to the authorities.[5] After having re-

---

[4]The police judge had furnished the police department with a list showing bail customarily required for traffic violations.

[5]Sergeant Todd testified that after plaintiff had been taken in custody by the South San Francisco police in response to the all-points bulletin and after defendant and his wife had arrived at the Burlingame police station in response to Officer Watson's direction, he (Todd) "asked them [defendant and his wife] what was their pleasure in the matter. And they told me they would like to have the man placed in custody . . . Well, maybe it wasn't quite in that light. I told them that we had the man—— it would help us if the man was placed in custody . . . I mean, if they would place the charges . . . I explained the fundamentals of the citizen's arrest . . . They asked me if they should get in touch with Mr. Carr [defendant's attorney], and I told them I didn't think we would have to bother him with that at this hour of the night. . . . Q. And did you ask them to sign—— Mr. Robison to sign this

ported the facts he stated to plaintiff that he arrested plaintiff (although, as above related, the latter was already in actual custody) and he signed a form by which he requested the police ''to assume custody and detention'' of plaintiff. Therefore, we treat the matter as not controlled by the stated rule.

False imprisonment is defined by statute as ''the unlawful violation of the personal liberty of another.'' (Pen. Code, § 236.) █ Imprisonment pursuant to a lawful arrest is not tortious. (*Dillon* v. *Haskell* (1947), 78 Cal. App.2d 814, 816 [178 P.2d 462].) Defendant urges that the citizen's arrest of plaintiff in the Burlingame police

---

paper [the citizen's arrest form]? He didn't ask for a citizen's arrest form, did he? A. No. Q. Did you hand this to him and ask him to sign it? A. This is Officer Watson's handwriting here (indicating). And that's my pen they used . . . Q. . . . Well then, who asked Mr. Robison to sign it? You or Officer Watson? A. I did the talking. Q. And did you ask him to sign it? A. I did. Q. And did you advise . . . Mr. Robison . . . how to make a citizen's arrest? A. Yes, sir. Q. What did you tell him? A. I told him that he'd have to make the manual arrest . . . I described it to him, and that's what he did when Mr. Peterson came into the Police Station.'' Sergeant Todd further testified that when Officer Watson brought Peterson into the station the latter was taken to a part of the station not open to the public and that he, Todd, opened the door so that ''Mr. Robison could come in and go through the formalities of the citizen's arrest.''

Sergeant Todd was also asked concerning his opinion of plaintiff's condition as to intoxication at the time he was brought into the station. The following appears: ''Q. I am just asking if you formed an opinion, based on his [plaintiff's] behavior and appearance, as to whether he was under the influence of intoxicating liquor. A. I have. Q. And what was that opinion? A. That he was intoxicated . . . Q. What . . . were your instructions . . . that were in effect at that time, from the Chief of Police, with reference to releasing an intoxicated person? A. Not to do so until they sober up. Q. And what did you customarily and normally do with them while they were sobering up? A. We put them in the cell-block. Q. And did you put Mr. Petersen in a cell-block? . . . Mr. Seagraves [counsel for plaintiff]: . . . We will stipulate he did . . . Mr. Carr [counsel for defendant]: . . . Did Mr. Robison at any time ask you orally to put Mr. Peterson in jail? A. No. Q. And what was your reason, or the basis on which you put Mr. Peterson in jail? A. Because he was not admissible to bail at that time. Q. Because he was intoxicated, as you testified? A. That's right, sir. . . . The Court: . . . Q. Would you have placed this Mr. Peterson under restraint had Mr. Robison not signed this so-called citizen's arrest form? A. Yes, we would have. Q. Would you have placed him under the same restraint had he not made the physical arrest? A. No, it would have been a different charge. We would have charged him with 1279, in and about a car. Q. Would you have . . . locked him up had Mr. Robison not gone through what you have described as the manual arrest? A. Oh, yes, sir. Yes, sir. He would have been placed in custody for being intoxicated, until he straightened out, and then he would be admitted to bail. Q. What was the purpose of your requesting Mr. Robison to sign the slip, then? A. So that we would have a 481 C.V.C. Hit-and-run is more than drunk in and about a car.''

station was lawful because within the provision of section 837 of the Penal Code that a private person may arrest another for a public offense committed in his presence. In the state of the record we cannot accept defendant's assumption that as a matter of law it was established that plaintiff was committing a public offense at the time defendant went through the procedure of announcing the citizen's arrest under the direction of Sergeant Todd.

Defendant asserts, "This arrest was lawful because the plaintiff Peterson was committing a misdemeanor in the presence of the defendant in that he was intoxicated in a public place." While the testimony of the officers that plaintiff was intoxicated when he arrived at the station, together with plaintiff's admissions, appears most persuasive on the record, this court cannot hold that plaintiff's intoxication was established as a matter of law, for the testimony that he was intoxicated, together with the effect of his admissions, is contradicted by the testimony of plaintiff himself that in his opinion he was not intoxicated. Nor can this court say that it is established that plaintiff was voluntarily "in a public place," the police station, in view of the evidence that plaintiff was brought there by and in the custody of Officer Watson after the South San Francisco police had arrested him and turned him over to Watson.

Although we cannot accept defendant's contention that the evidence establishes a lawful citizen's arrest, we must accept his further contention that the uncontradicted evidence shows that all defendant's actions in connection with the citizen's arrest of plaintiff were done, not of defendant's own initiative, but at the request and pursuant to the direction of Sergeant Todd. A private citizen who assists in the making of an arrest pursuant to the request or persuasion of a police officer is not liable for false imprisonment. (*Mackie* v. *Ambassador Hotel etc. Corp.* (1932), 123 Cal. App. 215, 222 [11 P.2d 3] ; see 29 A.L.R.2d 825.) It would be manifestly unfair to impose civil liability upon the private person for doing that which the law declares it a misdemeanor for him to refuse to do. (See Pen. Code, § 150 [misdemeanor for man over 18 to refuse officer's lawful request for aid in arrest] ; see also *id.*, § 839.)

Defendant found his car and the parking meter damaged by plaintiff; the officer who came to the scene told defendant to go to the police station; when defendant reached the station Sergeant Todd requested him to sign the citizen's

arrest form and to make a formal arrest of plaintiff upon plaintiff's arrival at the station; and when defendant expressed reluctance to himself arrest plaintiff, Sergeant Todd persuaded defendant to do so by assuring him that that was the proper way in which to handle the matter. In these circumstances defendant is not liable even if it be assumed that the imprisonment which followed his announcement that he arrested plaintiff was unlawful.

For the reasons above stated the judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent.

The majority opinion is based upon several false assumptions as well as misstatements of both fact and law.

It appears to be conceded that the arrest of plaintiff, insofar as it was brought about by the acts and conduct of defendant, was unlawful. This must be conceded because an arrest can be made by a private person only,

"1. For a public offense committed or attempted in his presence.

"2. When the person arrested has committed a felony although not in his presence.

"3. When a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it." (Pen. Code, § 837.)

The majority concedes that there was no basis for the arrest under any of the above provisions. But the majority seeks to justify the arrest on the ground ". . . that all defendant's actions in connection with the citizen's arrest of plaintiff were done, not of defendant's own initiative, but at the request and pursuant to the direction of Sergeant Todd." The majority opinion then states "It would be manifestly unfair to impose civil liability upon the private person for doing that which the law declares it a misdemeanor for him to refuse to do." (Citing Pen. Code, § 150,* which makes it a misdemeanor for a man over 18 years of age to refuse an

---

*"Every male person above 18 years of age who neglects or refuses to join the posse comitatus or power of the county, by neglecting or refusing to aid and assist in taking or arresting any person against whom there may be issued any process . . . being thereto lawfully required by any sheriff, deputy sheriff, coroner, constable, judge, or other officer concerned in the administration of justice, is punishable by fine of not less than fifty dollars ($50) nor more than one thousand dollars ($1,000)." (Pen. Code, § 150.)

officer's *lawful* request for aid in making an arrest.)   The foregoing reasoning is so basically unsound that I have difficulty in believing that it would be accepted by any court as a basis for its decision.

Can it be said with any semblance of truth or fairness that when the defendant signed the document entitled "Citizen's Arrest Form" and placed his hand upon plaintiff's shoulder and stated, "I arrest you in the name of the law," he was assisting an officer in making an arrest?   The answer to this question is obvious, and is found in the positive declarations to the contrary in the majority opinion.   The majority states the undisputed facts to be that plaintiff was first arrested by the South San Francisco police who held him in custody for the Burlingame police and delivered him to the Burlingame police who escorted him to the police station at Burlingame where he was detained in custody by the Burlingame police at the time defendant first saw him.   In other words, defendant had nothing whatever to do with the arrest and detention of plaintiff up to that time except to report the information he received after returning to where his automobile had been damaged.   For this court to attempt to apply the provisions of section 150 of the Penal Code to a situation of this character, and state, that if defendant had not complied with the request of the police to make a citizen's arrest, he would have been guilty of a misdemeanor, is a rank distortion of the English language.   From the plain wording of section 150 of the Penal Code the duty thereby imposed upon a citizen is to assist an officer in making a lawful arrest, when the officer so requests, and keeping the arrested person in custody.   Here, plaintiff had already been arrested and was in custody.   Whether the original arrest and custody were lawful at the time defendant purportedly made the unlawful citizen's arrest is not an issue here.   By no fair or reasonable interpretation of section 150 of the Penal Code can it be said that it was defendant's duty to make an unlawful arrest at the request of an officer, especially where the person he was requested to arrest had already been arrested and was in custody.

The majority opinion is written under the false assumption that plaintiff was intoxicated at the time his car collided with that of defendant and at all times thereafter until the Burlingame police offered to release him sometime after midnight on the night of the arrest.   I say this is a false assumption because the issue of intoxication was not raised until the

day of the trial when defendant raised it by an amendment to his answer. Plaintiff denied that he was intoxicated and the trial court stated that if the issue of intoxication was to be considered, it would grant a continuance of the trial to give plaintiff an opportunity to meet the issue. No such continuance was granted and no finding on the issue was made. Although the majority opinion is replete with discussion on the alleged issue of intoxication, it holds that the issue was not determined by the trial court and cannot be determined by this court because of the conflict in the evidence.

The trial court found that *defendant* unlawfully and against his will *arrested* plaintiff; that the arrest *by defendant* was wrongful and without probable cause. Implicit in these findings is a finding that defendant made the arrest; that he was not assisting the officers to make the arrest nor had he been ordered by them to assist. Thus there is no basis for the majority's assumption that defendant was assisting an officer in an arrest pursuant to section 150 of the Penal Code, *supra,* and hence not liable. The evidence supports that finding. Plaintiff was already in the custody of the police and at the police station. They needed no assistance to make an arrest. The statement signed by defendant said he made the arrest and requested the police assistance. Rather than defendant assisting the police, the police *asked defendant to sign a request that the police assist him* in making a citizen's arrest and told defendant how to proceed. The police testified that none of them made the arrest. True, defendant testified he made the arrest only at the suggestion of the authorities but that merely created a conflict in the evidence on the question. The trial court resolved that conflict against defendant and this court is bound by it. A volunteer who does not act on the order of an officer in making an arrest is not relieved of liability. (*Kirbie* v. *State,* 5 Tex.App. 60.) It has been said: "Private persons who volunteer to assist officers of the law in the execution of process, without being commanded or requested to do so, and those who act 'officiously' in such matters, must do so at their peril; and they are bound to take care that the authority of the officer is sufficient and his precept regular. Such persons put their conduct upon their own judgment, and if that deceives them they are responsible for their acts and liable as trespassers." (Newell on Malicious Prosecution, ch. IV, § 88.) Under facts far weaker than here present a person was held not to have been acting under section 150 of the Penal Code. (*City of*

*Long Beach* v. *Industrial Acc. Com.*, 4 Cal.2d 624 [51 P.2d 1089].)

It is clear that the trial court was justified in concluding that there was no assistance in an arrest; that defendant was not ordered to assist in an arrest; that there was no occasion for assistance in view of plaintiff's being in custody at the police station. At most the police were merely suggesting that defendant make the arrest on his own responsibility, probably for the reason that he had initiated the endeavor to apprehend plaintiff and the officers knowing they had no basis for an arrest without a warrant did not want to accept the responsibility.

This is another case where the majority of this court has, by specious reasoning and a disregard of settled rules of law, deprived a citizen of redress for an unlawful and unjustified infringement of his right to the enjoyment of life, liberty and the pursuit of happiness guaranteed by the Constitution and laws of this state. Again I say, that by the decision of the majority here, "The dignity and security of the individual citizen is subordinated to the whim and caprice of any fanatical overzealous person who chooses to point a finger of suspicion at him and thereby cause his arrest and imprisonment without written charge, complaint or warrant of arrest." (See dissenting opinion, *Turner* v. *Mellon*, 41 Cal.2d 45, 49, 50 [257 P.2d 15].)

It has been the settled law of this state from time immemorial that when a citizen's arrest is made, the burden is on the person making the arrest to show justification therefor (*Sebring* v. *Harris*, 20 Cal.App. 56 [128 P. 7].) Here it is conceded that the arrest was unlawful. This concession renders the defendant liable for all damages suffered by plaintiff as a proximate result of the arrest. This always has been and should continued to be the law of this state if we are to continue to maintain our American way of life.

I would affirm the judgment.